# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CHRISTIAN & ALEXA, INC.** ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action** |
| v. ) | **No.:** |
| ) | |
| **SANTIAGO ARRIAGA,** ) | **IN ADMIRALTY** |
| **Defendant.** ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT
### (28 U.S.C. §2201, et. Seq. and Fed.R.Civ.P. 57)

Christian & Alexa, Inc. (hereinafter referred to as "Plaintiff"), allege:

## JURISDICTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et. Seq. and Fed. R. Civ. P. 57.

2. Plaintiff seeks declaratory relief concerning admiralty and maritime claims brought for the purpose of determining a question in actual controversy between the parties, namely Plaintiff's obligation, if any, to pay for Maintenance and Cure, for which Defendant, Santiago Arriaga ("Arriaga"), has demanded from Plaintiffs under the doctrine of Maintenance and Cure and is an admiralty and maritime dispute between the parties within the meaning of Fed. R. Civ. P. 9(h). This Court has Admiralty and Maritime Jurisdiction pursuant to 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h).

## PARTIES

3. Plaintiff, Christian & Alexa, Inc., is and was at all material times a corporation duly organized under the laws of Virginia and the sole owner of F/V CHRISTIAN & ALEXA (NO. 937930).

4. On information and belief, Arriaga is an individual domiciled in Hampton, Virginia and was a member of the crew F/V CHRISTIAN & ALEXA.

## FACTS

5. Arriaga has asserted that, on or about June 2022, he allegedly sustained injuries to his neck, right shoulder, and right knee while he was a crewmember working at sea onboard the F/V CHRISTIAN & ALEXA.

6. On June 17, 2022, Arriaga executed a Departure Agreement for employment onboard the F/V CHRISTIAN & ALEXA. *See* Exhibit A attached hereto.

7. By signing the Departure Agreement, Arriaga certified that "If an illness, disability or injury is suffered by a crew member, the crew member shall immediately notify the Captain prior to leaving the Vessel. By law, crew members must notify the Captain or any agent of the Vessel Owner regarding such illness, disability or injury in writing no later than (7) days after the date of the illness, disability or injury."

8. In this Agreement, Arriaga certified he was in good health and had no physical impairments which would affect his ability to perform required duties.

9. As part of the Departure Agreement, Arriaga was made aware that "THE VESSEL IS A DRUG FREE WORKPLACE! EACH CREW MEMBER AGREES TO A CHEMICAL DRUG AND/OR ALCOHOL TEST IN THE FOLLOWING CASES: PRE-EMPLOYMENT, ACCIDENT ABOARD THE VESSEL, RANDOM TESTS, AND BY REQUEST FROM THE OWNER OR VESSEL MANAGEMENT AT ANY TIME. ALL POSITIVE TESTS WILL BE REPORTED TO THE APPROPRIATE GOVERNMENT OFFICIALS. ANY CREW MEMBER WITH A DRUG TEST RESULT THAT IS POSITIVE FOR A CONTROLLED SUBSTANCE WILL BE

    REMOVED FROM THE VESSEL AND BARRED FROM FURTHER SERVICE ON BOARD THE VESSEL, REGARDLESS OF WHEN OR WHERE THE CONTROLLED SUBSTANCES WERE USED."

10. In addition, the Departure Agreement states as follows: "No crew member will introduce, possess, or use alcohol or illegal drugs on board the Vessel, and it is the duty of each crew member to assist the Captain and other crew members in fulfilling their responsibilities for the safe and lawful operation of the Vessel. Therefore, each crew member understands the occurrence of any of the events listed below will terminate his/her contract as a member of the crew and may limit any right he/she may have to make a claim of any nature, against the Vessel, the Owner, Operator, or Manager of the Vessel:

  a. Bringing aboard, or possessing aboard the Vessel, firearms, alcohol, drugs or drug paraphernalia, heroin, cocaine, hashish, marijuana, amphetamine, barbiturate, opioid, or any other controlled substance.

  b. Unless ill or injured, refusing to work on the Vessel during any portion of the trip.

  c. Leaving the Vessel without the Captain's permission before the trip is over or, having gone ashore with the Captain's permission, failing to return to the Vessel at the time designated by the Captain.

  d. After the Vessel returns to port, refusing to complete and sign a post-arrival statement…."

11. On July 1, 2022 the F/V CHRISTIAN AND ALEXA experienced a soft grounding outside of New Bedford, Massachusetts, resulting in no damage.

12. At the time of the soft grounding, Arriaga was observed on deck of the vessel and was not affected in any way. He did not fall, stagger or bump into anything.

13. At the time of the soft grounding, all of the fishing gear, dredge and associated hoisting tackle was previously secured before leaving the fishing grounds earlier that day. None of the gear was disturbed during the soft grounding.

14. Later that day, Arriaga had gone to the dock to operate the winch to lift the scallops to the dock. A lumper reported to Captain Ryan A. White ("White") that something was wrong with Arriaga.

15. White observed that Arriaga was under the influence of some drug and not doing well. He was swaying and had his eyes closed.

16. White went immediately to the winch and woke Arriaga to get his attention. White Ordered Arriaga to go back to his bunk.

17. When White went back on board the Vessel, a lumper screamed "I think he's dead."

18. That lumper was referring to crewmember Fidel Zapien-Valenzula.

19. After an unsuccessful attempt to wake Zapien-Valenzula, White utilized Narcan spray to revive him.

20. After Zapien-Valenzula's overdose, White informed the crew that they had to get drug tested.

21. During this particular trip several crew members observed Arriaga crushing pills and inhaling the crushed substance through his nose.

22. Arriaga was observed by those crew members falling asleep while standing.

23. It was also noted by crew members that Arriaga appeared to be under the influence of drugs during the trip.

24. In addition, crew members assert that Arriaga did not complain of any pain or show any sign of being hurt throughout the trip.

25. After disembarking from the Vessel, Arriaga was witnessed throwing air-punches and happily taking part in horseplay with friends, not showing any sign of pain or injury.

26. White informed Arriaga that he would be required to have a drug test, but Arriaga did not respond.

27. On July 5, 2022, Arriaga took a urinalysis drug test performed at I&O Medical Centers. Arriaga's urine tested non-negative for Cocaine.

28. White informed Arriaga that he was terminated as a result of Arriaga's positive drug test.

## COUNT I:
## DECLARATORY RELIEF ON OBLIGATION TO PAY MAINTENANCE AND CURE
**(Christian & Alexa, Inc. v. Santiago Arriaga)**

29. Plaintiff reiterates and realleges their allegations contained in Paragraph Nos. 1-28. inclusive and incorporate same as if fully set forth herein.

30. A seaman's employer is entitled to investigate a seaman's claim for Maintenance and Cure benefits.

31. A seaman's employer is allowed to rely on certain legal defenses to deny the seaman's claims for maintenance and cure benefits.

32. An employer has no duty to pay Maintenance and Cure if a seaman is willfully intoxicated or under the influence of drugs at the time of his injury if he is claiming Maintenance and Cure is owed.

33. An employer's obligation to pay Maintenance and Cure extends only to those injuries seamen sustain while in the service of the vessel.

34. Mr. Arriaga did not sustain any injuries on a trip in June of 2022.

**WHEREFORE**, the Plaintiff, Christian & Alexa, Inc., prays that this Honorable Court enter judgment on Count I in favor of Plaintiff and against the Defendant, Santiago Arriaga, and issue a Declaratory Judgment as follows:

   a. Plaintiff, Christian & Alexa, Inc., is not obligated to pay Arriaga Maintenance and Cure;

   b. Any other such relief as in law and justice it may be entitled to receive.

## COUNT II:
## BREACH OF CONTRACT
**(Christian & Alexa, Inc. v. Santiago Arriaga)**

35. Plaintiff reiterates and realleges its allegations contained in Paragraph Nos. 1-28 inclusive and incorporates same as if fully set forth herein.

36. On June 17, 2022, Arriaga executed a Departure Agreement for employment onboard the F/V CHRISTIAN & ALEXA and knowingly denied to any drug possession or usage on board the Vessel.

37. All conditions in the Departure Agreement have been performed and satisfied by Plaintiff.

38. Arriaga has breached conditions precedent in his employment contract by using drugs on board the Vessel.

**WHEREFORE**, the Plaintiff, Christian & Alexa, Inc., prays that this Honorable Court enter judgment on Count II in favor of Plaintiff and against the Defendant, Santiago Arriaga, and issue a Declaratory Judgment as follows:

a. Plaintiff, Christian & Alexa, Inc., is not obligated to pay Arriaga Maintenance and Cure;

b. Any other such relief as in law and justice it may be entitled to receive.

Respectfully submitted,
Christian & Alexa, Inc.
By its attorneys,

*/s/ David S. Smith*
David S. Smith, Esq. (BBO No. 634865)
FARRELL SMITH O'CONNELL
AARSHEIM APRANS LLP
27 Congress Street, Suite 109
Salem, MA 01970
Tel: 978-744-8918
dsmith@fsofirm.com

Dated: September 2, 2022